1   Dennis L. Kennedy (Nevada Bar No. 1462)
    Sarah E. Harmon (Nevada Bar No. 8106)
2   BAILEY∨KENNEDY
    8984 Spanish Ridge Avenue
3   Las Vegas, Nevada 89148-1302
    Telephone:  (702) 562-8820
4   Facsimile:  (702) 562 8821
    E-Mail:      dkennedy@baileykennedy.com
5                sharmon@baileykennedy.com

6   Mary Beth Forshaw (*pro hac vice*)
    SIMPSON THACHER & BARTLETT LLP
7   425 Lexington Avenue
    New York, New York 10017
8   Telephone:  (212) 455-2000
    Facsimile:  (212) 455-2502
9   E-Mail:      mforshaw@stblaw.com

10  Deborah L. Stein (*pro hac vice*)
    SIMPSON THACHER & BARTLETT LLP
11  1999 Avenue of the Stars, 29th Floor
    Los Angeles, California 90067
12  Telephone:  (310) 407-7500
    Facsimile:  (310) 407-7502
13  E-Mail:      dstein@stblaw.com

14  Attorneys for Defendant NATIONAL FIRE &
    MARINE INSURANCE COMPANY

15
                    **UNITED STATES DISTRICT COURT**
16                     **DISTRICT OF NEVADA**

17  ASSURANCE COMPANY OF AMERICA;            )  Case No. 2:09-cv-01182-JCM-PAL
    MARYLAND CASUALTY COMPANY;               )
18  NORTHERN INSURANCE COMPANY OF            )
    NEW YORK; ZURICH SPECIALTIES             )
19  LONDON; ZURICH AMERICAN                  )  **AMENDED            ORDER OF**
    INSURANCE COMPANY; and                   )  **JUDGMENT AND ACCOMPANYING**
20  STEADFAST INSURANCE COMPANY,             )  **FINDINGS IN FAVOR OF**
                                             )  **DEFENDANT NATIONAL FIRE &**
21                      Plaintiffs,          )  **MARINE INSURANCE COMPANY**
                                             )
                 v.                          )  Trial Date:  June 4, 2012
22                                           )  Time:  9:00 a.m.
    NATIONAL FIRE & MARINE                   )  Judge:  The Honorable James C. Mahan
23  INSURANCE COMPANY,                       )  Crtrm:  Courtroom 6A
                                             )         333 S. Las Vegas Blvd.
24                      Defendant.           )         Las Vegas, NV 89101
                                             )
25  _____     )

At 9:00 a.m. on June 4, 2012, the Court convened trial of the above-captioned action. Plaintiffs and Defendant made opening statements. Following opening statements, the Court instructed Plaintiffs to call their first witness. Plaintiffs' counsel advised that their only witness would not be present until after noon and he instead wanted to walk through evidence that had not been admitted by the Court. Plaintiffs' counsel represented that the parties had stipulated to the admissibility of certain evidence. The record reflected that Defendant had reserved hearsay and foundation objections for trial. The Court informed Plaintiffs' counsel that a witness was required to bring exhibits into evidence. The Court recessed until 1:00 p.m. and directed Plaintiffs to have the witness there when court reconvened.

Upon reconvening at 1:00 p.m., Plaintiffs called a witness who had no personal knowledge of any of the underlying construction defect claims at issue in the case. Plaintiffs then made a request for judicial notice which, following argument of counsel, the Court denied. After Plaintiffs rested, Defendant moved for judgment pursuant to Federal Rule of Civil Procedure 52(c). The Court heard argument on and then granted the motion for the reasons set forth herein.

## I.   INTRODUCTION

Plaintiffs Assurance Company of America, Maryland Casualty Company, Northern Insurance Company of New York, Steadfast Insurance Company, Zurich American Insurance Company, and Zurich Specialties London are six separate insurance carriers which, on July 1, 2009, filed the Complaint against National Fire. At the outset of the litigation, Plaintiffs sought equitable contribution from National Fire in connection with defense costs and settlements allegedly paid by Plaintiffs with respect to approximately 58 underlying construction defect claims. During the course of the litigation, Plaintiffs voluntarily dismissed their claims for relief relating to half of these underlying construction defect claims. (Dkt. Nos. 60, 90.)

On July 28, 2011, the Court granted summary judgment to National Fire with respect to

three underlying construction defect claims, finding National Fire owed no contribution

obligation because it had no duty to defend or indemnify the underlying claims.  (Dkt. No. 114.)

With respect to Plaintiffs' cursory 12-page motion seeking partial summary judgment on

twenty-seven different underlying claims, the Court noted that "plaintiffs lump nearly half of the

claims in the complaint together with only four pages of explanatory factual background. . . .

[and] are essentially asking the court to distill four-thousand pages of evidence to conclude, as a

matter of law, that plaintiffs are entitled to prevail."  (Dkt. No. 114 at 3:21–24.)  The Court

denied that motion along with a second motion for partial summary judgment filed by Plaintiffs.

(Dkt. No. 114.)  Following the summary judgment order, 26 underlying construction defect

claims remained at issue for trial.

On August 5, 2011, Plaintiffs filed a motion for a pre-trial conference.  (*See* Dkt. No.

115.)  In that motion, Plaintiffs proposed phasing trial, with at least one phase comprised

entirely of briefing followed by a trial on damages.  On August 16, 2011, the Court denied that

request, noting that "the case must now be set for trial on the claims surviving summary

judgment" and that "Plaintiff is not entitled to another two rounds of 'phased briefing' after

decision of its dispositive motion."  (Dkt. No. 118 at 2:25–28.)

On September 8, 2011, the parties submitted their Proposed Pre-Trial Order which

attached a list of Plaintiffs' and Defendant's proposed trial exhibits, respectively.  The Proposed

Pre-Trial Order includes certain limited stipulations concerning certain exhibits.  For example,

Defendant "stipulated" to certain exhibits but only "while reserving hearsay and foundation

objections for trial."  (Dkt. No. 123 at 59:5–7.)  The Court entered the Pre-Trial Order on

September 12, 2011 and cautioned the parties that the order "shall not be amended except by

order of the court pursuant to agreement of the parties or to prevent manifest injustice."  (Dkt.

No. 125 at 65:14–15.)

On April 20, 2012—two months after the case had been previously scheduled to

commence trial—Plaintiffs moved to augment the Pre-Trial Order to add 52 exhibits to their exhibit list, none of which Plaintiffs produced during discovery.  (Dkt. No. 158.)  The Court denied that motion for the reasons set forth in the Court's May 30, 2012 order.  (*See* Dkt. No. 164.)  Notwithstanding the Court's order excluding those 52 exhibits, Plaintiffs filed an Exhibit List on May 31, 2012 (a day after the deadline) that listed those excluded exhibits as Exhibits 297 to 348.  That same day, Plaintiffs filed 26 amended pre-trial briefs, the vast majority of which cited to the excluded exhibits.

On June 1, 2012, Defendant filed an Objection to Plaintiffs' Exhibit List on the grounds that it (i) incorporated the 52 exhibits excluded from trial by order of the Court, and (ii) misrepresented the nature of stipulations entered into by the parties with respect to certain other exhibits.  (*See* Dkt. No. 200.)   The objection expressly noted that Defendant had tailored its stipulations concerning the evidence and had reserved hearsay and foundation objections for trial.  That same day, Defendant also filed a Motion to Strike Portions of Plaintiffs' Trial Briefs and Findings of Fact and Conclusions of Law based upon: (i) Plaintiffs' incorporation and reliance on exhibits expressly excluded by the Court's May 25, 2012 Order (Dkt. No. 164); and (ii) Plaintiffs' inclusion of brand-new damages calculations on the eve of trial inconsistent with those provided during discovery.  (*See* Dkt. No. 201.)

On June 1, 2012, the Court issued its order on the various motions *in limine* filed by the parties.  (*See* Dkt. No. 202.)  In that order, among other things, the Court granted Defendant's motion to exclude secondary evidence of the contents of settlement agreements (Dkt. No. 149) because, pursuant to the best evidence rule, the settlement agreements themselves must be admitted to prove the contents of said agreements.  In its motion, Defendant represented that Plaintiffs produced only 9 of 25 purported settlement agreements during discovery.  Plaintiffs presented no evidence suggesting otherwise.

On June 4, 2012, trial commenced with respect to Plaintiffs' request for equitable

contribution on the remaining 26 underlying construction defect claims.  Plaintiffs called one witness, Heidi Foote, who had no personal knowledge with respect to any of those claims. Plaintiffs then handed the Court and defense counsel a Request for Judicial Notice.  (Dkt. No. 204.)  The Request did not supply the necessary information for the Court to take judicial notice. For example, it did not attach the documents or reference exhibit numbers.  Nor did the Request make reference to what content within the documents Plaintiffs sought to be noticed or for what purpose.  Moreover, as Plaintiffs conceded, the Request sought consideration of documents that had not been produced during discovery and had already been excluded from trial.  The Court denied the Request.

Following the conclusion of Plaintiffs' case, Defendant moved for judgment pursuant to Federal Rule of Civil Procedure 52(c).  Defendant correctly argued that Plaintiffs had not presented any facts at trial that could support a finding that Plaintiffs were entitled to relief with respect to any of the 26 construction defect claims, regardless of whether certain evidence was stipulated as admissible or not.  For this reason, and based upon the findings of fact and conclusions of law below, Defendant's motion for judgment pursuant to Rule 52(c) is granted.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 52, "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 52(c). Under Rule 52(c), the Court has express authority to resolve disputed issues of fact.  *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).  The Court may make findings in accordance with its own view of the evidence and is not required to draw any inferences in favor of the non-moving party.  *Id.*

4

To make a case for equitable contribution, Plaintiffs bear the burden of establishing that they insured the same insured and covered the same risk as National Fire.  *See* 15 Couch on Insurance § 218:3 (3d ed. 2011) ("[C]ontribution is only appropriate where the policies insure the same entities, the same interests in the same property, and the same risks.").  "In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others.  Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured." *Fireman's Fund Ins. Co. v. Md. Cas. Co*., 77 Cal. Rptr. 2d 296, 303 (Cal. Ct. App. 1998); *Low v. Golden Eagle Ins. Co*., 125 Cal. Rptr. 2d 155, 162 (Cal. Ct. App. 2002); *see Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007) (holding that elements of contribution cause of action "require that the several insurers share a common obligation or burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden"); *Republic Ins. Co. v. U. S. Fire Ins. Co.*, 444 P.2d 868, 870 (Colo. 1968) (contribution cause of action cannot be enforced unless there is "an identity between the policies as to parties, and the insurable interests and risks").  Conversely, if Plaintiffs do not make this showing, they lack standing in this Court.  *Fireman's Fund*, 77 Cal. Rptr. 2d at 303.  Further, "[a]n insurer can recover equitable contribution only when that insurer has paid more than its fair share; if it has not paid more than its fair share, it cannot recover, even against an insurer who has paid nothing." *Scottsdale Ins. Co. v. Century Sur. Co*., 105 Cal. Rptr. 3d 896, 906 (Cal. Ct. App. 2010); *see Mid-Continent*, 236 S.W.3d at 772.

5

## **FINDINGS OF FACT**

1.     Plaintiffs elicited no testimony at trial that one or more Plaintiffs and Defendant insured the same insured and covered the same risk with respect to any of the 26 underlying construction defect claims.

2.     Plaintiffs elicited no testimony at trial that one or more Plaintiffs paid more than its fair share with respect to any of the 26 underlying construction defect claims.

3.     Plaintiffs elicited no testimony at trial concerning the insurance policies issued by Plaintiffs.  Nor did Plaintiffs move these policies into evidence.

4.     Plaintiffs elicited no testimony at trial concerning the insurance policies issued by Defendant.  Nor did Plaintiffs move these policies into evidence.

5.     Plaintiffs only offered for admission into evidence a handful of excerpts from proposed trial exhibits.  (The excerpts were not previously identified as freestanding proposed exhibits.)  As set forth below, Plaintiffs did not lay a foundation for the admission of these documents into evidence or overcome hearsay or best evidence concerns about the admission of the documents.

6.     Plaintiffs' counsel represented that he was under the impression that Defendant had stipulated to the admissibility of certain other exhibits.  As to these exhibits, the Pre-Trial Order reflected that Defendant had reserved hearsay and foundation objections for trial.  (Dkt. No. 125 at 59:5–7.)  To the extent Plaintiffs found Defendant's partial stipulation confusing, Defendant had clarified in a written objection filed prior to trial that it had not stipulated to the admission of these documents into evidence as it had expressly reserved certain objections. Defendant advised in open court that it was not challenging authenticity but that, given the volume of many of the exhibits, it was not feasible to provide a blanket stipulation that every document within each of Plaintiffs' lengthy exhibits was admissible under the Federal Rules of Civil Procedure.  Defendant correctly expected an opportunity at trial to see how Plaintiffs were

using the documents to advance their case so that Defendant could evaluate whether a foundation had been laid and whether hearsay requirements were met.  Notwithstanding the lengthy discussion at trial concerning the scope of the stipulations between the parties, Plaintiffs never moved for admission into evidence any of the documents listed on the Pre-Trial Order Exhibit Lists—not generically or by name or number.  Despite being advised by Defendant days before trial that it did not stipulate to the admissibility of exhibits, Plaintiffs did not even attempt to question a witness about these documents in order to lay a foundation or overcome hearsay concerns.

7.      Plaintiffs elicited no testimony at trial that credibly supports Plaintiffs' contentions concerning sums purportedly paid in connection with the underlying actions.  The only trial witness, Heidi Foote of Plaintiff Zurich American Insurance Company, conceded that: (a) she had no personal involvement in handling or supervising the 26 claims at issue (Trial Tr. at 92:19–21); (b) her group was not involved in handling the claims (Trial Tr. at 92:22–24); (c) she was not involved in the decision to seek contribution from Defendant (Trial Tr. at 92:25–93:3); (d) she did not approve the complaint before it was filed or approve the selection of claims included therein (Trial Tr. at 93:4–9); and (e) during the few hours in which she glanced at claim files in preparation for her deposition, she did not review all of the documents and found it hard to keep the files straight because "they kind of all ran together."  (Trial Tr. at 94:7–20.)  She also did not speak with any of the claims examiners who actually handled the claims at issue.  (Trial Tr. at 95:2–4.)  It is clear from her testimony that Ms. Foote had no firsthand knowledge of the claims at issue or any payments made in connection with those claims.

8.      Ms. Foote purported to testify about the "Easy Access System" at trial.  According to Ms. Foote, that system allows Plaintiffs to keep track of, among other things, financial data.  (Trial Tr. at 56:17–22.)  Ms. Foote testified that she does not perform an accounting function at Zurich and, in fact, never worked in any accounting function at Zurich.

1  (Trial Tr. at 95:11–20.)  Ms. Foote is not in charge of, nor has she ever been in charge of,

2  maintaining the Easy Access System.  (Trial Tr. at 95:21–23.)

3        9.     On direct examination, Ms. Foote was shown excerpts from the Easy Access

4  System, which were themselves purportedly excerpts from documents that had been listed on

5  Plaintiffs' Exhibit List (Dkt. No. 198) as Exhibit Nos. 264, 265, 292 and 295.  Ms. Foote

6  testified in conclusory fashion that certain documents within the excerpts were screen shots from

7  the Easy Access System.  Ms. Foote described the screen shots as "summary pages."  (Trial Tr.

8  at 61:3–5.)  Ms. Foote testified that there are separate payment screens that underlie the

9  summary pages that provide payee, bank account, and check number information.  (Trial Tr. at

10  62:17–63:7.)  Specifically, she conceded that "[t]here is another section of this particular screen

11  that runs down the left hand side that includes access to the Z notes, access to the payments,

12  access to reserve history, coverage information, legal information that you would select that

13  heading and it would take you to the financial pages."  (Trial Tr. at 62:2–7.)  Notwithstanding

14  the fact that the payment screens would be more reliable than summary screens, Ms. Foote was

15  not shown the payment screens at trial.  With no witness having even attempted to lay a

16  foundation at trial, the Court has no basis to determine whether those payment screens were

17  included in the proffered excerpts of the exhibits.  Moreover, Ms. Foote admitted that there is

18  some source of information that references checks other than the information that was put before

19  the Court, and that Plaintiffs possess electronic copies of the checks evidencing the payments for

20  which Plaintiffs seek contribution.  (Trial Tr. at 98:8–16.)  Notwithstanding the fact that

21  Defendant requested during discovery "[a]ll documents that relate to payments made by you on

22  behalf of the companies, including evidence that payments were made and the amounts of such

23  payments," Plaintiffs did not produce this other information or copies of checks evidencing

24  payment of alleged defense costs or indemnity payments.  (Trial Tr. at 108:21–24; Joint Status

25  Report/Motion to Compel, Dkt. No. 45, Ex. D at 9:6–7.)

10.     Ms. Foote provided no testimony to credibly demonstrate that the records were made at or near the time by—or from information transmitted by—someone with knowledge. Nor did she provide testimony that credibly demonstrated that the records were kept in the course of a regularly conducted activity of the business and that making the record was a regular practice of that activity.  Moreover, Ms. Foote was not the custodian of the records or a witness with any personal or even supervisory involvement in the underlying claims at issue.

11.     Ms. Foote did not personally input any of the information in the screen shots and conceded that she does not have any firsthand knowledge about any of the payments referenced in those screen shots.  (Trial Tr. 96:3–8.)  Ms. Foote further conceded that she did nothing to verify the accuracy of any entries in the Easy Access System that were the subject of her testimony.  (Trial Tr. at 96:20–24.)

12.     Plaintiffs offered into evidence exhibits marked as A-1 through A-25.  Plaintiffs' counsel represented that these exhibits reflected excerpts of marked-but-not-admitted Exhibits 264–277, 279–290, 292, 293, and 295.  (Trial Tr. at 90:14–91:16.)  Plaintiffs only questioned Ms. Foote on A-1, A-2, A-3, and A-14.  Unlike A-1, A-2, and A-3, Exhibit A-14 was not a screenshot.  Rather, it was comprised of two "Claim Summary Reports" which appeared to be memoranda prepared by an adjuster named Pat Gier.  Plaintiffs offered these reports and Ms. Foote's testimony as secondary evidence of the terms of a written settlement agreement. Defendant appropriately objected to the evidence and moved to strike the testimony under the best evidence rule for the reasons set forth in the Court's June 1, 2012 Order on the motions *in limine* (Dkt. No. 202).  Moreover, Plaintiffs failed to lay a sufficient foundation for any of the exhibits marked as A-1 through A-25.

13.     Even if the Court were to consider the documents Plaintiffs moved into evidence, Plaintiffs have not demonstrated by a preponderance of the evidence that they paid a sum certain in defense costs or under which policy such amount was paid with respect to any of the

1    underlying construction defect claims.  Nor have Plaintiffs demonstrated by a preponderance of

2    the evidence which of the six Plaintiffs purportedly contributed to the defense of any of those

3    claims.

4        14.    Plaintiffs also presented no evidence of amounts paid by co-insurers in defense

5    costs or indemnity costs with respect to any of the underlying claims.

6        15.    Nor did Plaintiffs present evidence of what their "fair share" of the defense costs

7    and indemnity costs are with respect to any of the underlying claims.

8        16.    Finally, Plaintiffs presented no evidence that they paid more than their "fair

9    share" in defense costs and indemnity costs with respect to any of the underlying claims.

10                              **CONCLUSIONS OF LAW**

11       1.    The Supreme Court has instructed that "[w]e . . . begin with the ordinary default

12   rule that plaintiffs bear the risk of failing to prove their claims. . . . Thus, we have usually

13   assumed without comment that plaintiffs bear the burden of persuasion regarding the essential

14   aspects of their claims." *Schaffer v. Weast*, 546 U.S. 49, 57 (2005) (citing 2 J. Strong,

15   McCormick on Evid. § 337, at 412 (5th Ed. 1999) ("The burdens of pleading and proof with

16   regard to most facts have been and should be assigned to the plaintiff who generally seeks to

17   change the present state of affairs and who therefore naturally should be expected to bear the

18   risk of failure of proof or persuasion."); C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d

19   ed. 2003) ("Perhaps the broadest and most accepted idea is that the person who seeks court

20   action should justify the request, which means that the plaintiffs bear the burdens on the

21   elements in their claims.")).

22       2.    In declaratory relief actions where the plaintiff has demonstrated standing, "[i]t is

23   a fundamental rule that the burden of proof in its primary sense rests upon the party who, as

24   determined by the pleadings, asserts the affirmative of an issue and it remains there until the

25   termination of the action.  It is generally upon the party who will be defeated if no evidence

relating to the issue is given on either side." *Pacific Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 547 (9th Cir. 1949).  In *Pacific Portland*, the plaintiff sought an interpretation of the contract, its rights under it, a declaration of non-liability and relief from asserted overcharges and the court held plaintiff bore the burden of establishing evidence to prove related entitlement.  *Id.*

3.   Likewise here, if Plaintiffs do not present evidence as to the claims they have brought, they are not entitled to relief.  *See Schaffer*, 546 U.S. at 534; *Pacific Portland*, 178 F.2d at 547.

4.   In an equitable contribution action, the plaintiff insurer must demonstrate that the insurers "insure the same insured and cover the same risk."  *Fireman's Fund*, 77 Cal. Rptr. 2d at 303; *Low*, 125 Cal. Rptr. 2d at 162; *see Mid-Continent Ins.*, 236 S.W.3d at 772 (insurers in contribution action must "share a common obligation or burden"); *Republic Ins.*, 444 P.2d at 870 (contribution cause of action cannot be enforced unless there is "an identity between the policies as to parties, and the insurable interests and risks"); 15 Couch on Insurance § 218:3 ("[C]ontribution is only appropriate where the policies insure the same entities, the same interests in the same property, and the same risks.").  Additionally, Plaintiffs must prove they paid more than their "fair share" of the defense and indemnity costs for the common insured.  Plaintiffs also "bear[] the burden of producing the evidence necessary to calculate such 'fair share.'"  *Scottsdale*, 105 Cal. Rptr. 3d at 900.  Plaintiffs "cannot recover as equitable contribution from another insurer any amount that would result in the first insurer paying *less* than its 'fair share' even if that means that the otherwise liable second insurer will have paid nothing."  *Id.* (emphasis in the original); *see Mid-Continent Ins.*, 236 S.W.3d at 772 ("insurer seeking contribution [must have] made a compulsory payment or other discharge of more than its fair share of the common obligation or burden").

5.      In *Scottsdale*, Scottsdale Insurance Company brought suit against Century Surety Company ("Century"), seeking equitable contribution based on Century's alleged failure to participate in the defense of common insureds in various underlying actions in which Scottsdale, and at least one other insurer, defended the insured parties. *Id.* at 899. Scottsdale also sought equitable contribution with respect to the indemnity of the common insureds for amounts paid to settle the actions. *Id.* The trial court "awarded Scottsdale half of all defense and indemnity payments it made with respect to the claims for which it was entitled to recover equitable contribution." *Id.* at 900. The court of appeal reversed and remanded the action because Scottsdale failed to meet its burden of proving the amount of its fair share and that its payments had exceeded this amount. *Id.* at 908. "If Scottsdale's records were so inadequate that they could not demonstrate that Scottsdale paid more than its fair share, Scottsdale did not meet its burden of proof and could not recover equitable contribution *at all*." *Id.* at 907.

6.      Similarly, here, Plaintiffs bear the burden of proving their "fair share" of the defense costs and indemnity costs in each of the underlying matters. Likewise, to recover under an equitable contribution theory, Plaintiffs bear the burden of proving they paid more than their fair share of these amounts in the underlying matters. This necessarily requires that Plaintiffs prove what they paid in defense and what they paid in indemnity, a burden Plaintiffs did not meet here.

7.      Based upon its factual findings set forth above, the Court concludes that Plaintiffs' claims against Defendant also fail because Plaintiffs did not demonstrate that Defendant had any obligations under its policies with respect to the underlying claims and that one or more Plaintiffs and Defendant insured the same insured and covered the same risk.

8.      The Court further concludes that Plaintiffs' claims against Defendant fail because Plaintiffs did not demonstrate that one or more Plaintiffs paid more than its fair share of the underlying defense and indemnity costs.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court grants Defendant's Rule 52(c) motion and finds that Defendant is entitled to judgment on all remaining causes of action.  The clerk is directed to enter judgment in favor of Defendant and close the file.  IT IS SO ORDERED.

Dated July 5, 2012.

_____
JAMES C. MAHAN
United States District Judge

Respectfully submitted by,

BAILEY ∨ KENNEDY

By:  /s/ Sarah E. Harmon
 Dennis L. Kennedy (NB No. 1462)
 Sarah E. Harmon (NB No. 8106)
 8984 Spanish Ridge Avenue
 Las Vegas, Nevada 89148-1302
 Telephone:  (702) 562-8820
 Facsimile:  (702) 562-8821
 E-mail: dkennedy@baileykennedy.com
  sharmon@baileykennedy.com

SIMPSON THACHER & BARTLETT LLP
Mary Beth Forshaw (*pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502
E-mail: mforshaw@stblaw.com

Deborah L. Stein (*pro hac vice*)
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone:  (310) 407-7500
Facsimile:  (310) 407-7502
E-mail: dstein@stblaw.com

Attorneys for Defendant National Fire &
Marine Insurance Company

**CERTIFICATE OF SERVICE**

In accordance with Fed. R. Civ. P. 5, I certify that I am an employee of Bailey∨Kennedy and that on the 22nd day of June, 2012, a copy of the AMENDED [PROPOSED] ORDER OF JUDGMENT AND ACCOMPANYING FINDINGS IN FAVOR OF DEFENDANT NATIONAL FIRE & MARINE INSURANCE COMPANY was served on the parties by filing and serving the same using the ECF system or by United States mail postage prepaid as follows:

William C. Reeves
Morales, Fierro & Reeves
725 S. Eighth Street, Ste. B
Las Vegas, NV 89101

/s/ *Bonnie O'Laughlin*
*Bonnie O'Laughlin*, an employee of
BAILEY∨KENNEDY

14